*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. M. BRAMMER, Minor.

UNPUBLISHED
September 2, 2021

No. 355244
Montcalm Circuit Court
Family Division
LC No. 2017-000771-NA

Before: TUKEL, P.J., and K. F. KELLY and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor child, LMB, under MCL 712A.19b(3)(c)(*ii*) (other conditions have not been rectified), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. FACTS

On April 19, 2018, petitioner Department of Health and Human Services (DHHS) petitioned the trial court to remove LMB and his siblings, AB, WH, and CB, from respondent's home. The petition asserted that respondent had a substantiated history with Children's Protective Services (CPS); since 2003, there had been 76 referrals regarding the children, 45 of which the agency assigned for investigation, and 7 of which were substantiated against respondent. The petition alleged improper supervision of the children, physical neglect of the children, educational neglect, failure to protect the children from sexual abuse, unsanitary home conditions, and domestic violence. The petition included allegations that in 2018 respondent perpetrated domestic violence against LMB's mother and respondent's adult son, threatened to beat AB if CPS attempted to remove the children, and threatened to kill the CPS workers if they attempted to remove the children.

A preliminary hearing was held April 19, 2018, at the conclusion of which the trial court authorized the filing of the petition and removed the children from respondent's home. The trial court ordered that respondent be permitted frequent parenting time with LMB and the other children. Thereafter, at a hearing held May 16, 2018, petitioner advised the trial court of difficulties during visitation between respondent and LMB, and extreme and violent behavior by LMB following the visits. Petitioner reported that the cause of LMB's behavior was unclear. The

-1-

trial court suspended parenting time between LMB and respondent pending further hearing on the matter and directed petitioner to file a motion regarding respondent's parenting time with LMB. After a hearing on petitioner's motion, the trial court suspended respondent's parenting time with LMB for six weeks, and ordered that a hearing be held at the end of that time to revisit the issue. At a hearing held July 24, 2018, respondent and LMB's mother admitted the allegations of the petition, and by order dated July 26, 2018, the trial court assumed jurisdiction of the children. The trial court continued the suspension of respondent's parenting time with LMB until the results of LMB's trauma assessment were received.

For the next two years, respondent and the children were provided services with the goal of reunifying the family. The services provided to respondent included psychological evaluation, counseling with an anger specialist, individual counseling, domestic violence counseling, family counseling, and parenting education. LMB was provided trauma assessment and counseling, as well as foster care services. LMB, CB, and WH continued to show signs of trauma, frequently having violent episodes. Although respondent consistently participated in services, petitioner expressed concerns that respondent was not benefiting from services because he did not accept responsibility for the children's trauma.

In January 2020, AB turned 18 years old and was dismissed from the case. WH and CB, then ages 14 and 12, had experienced only limited success in their non-residential placement and requested to return to respondent's home, which the trial court ultimately permitted. LMB, however, continued to be very fearful of respondent and did not want contact with him.

Petitioner filed a supplemental petition seeking termination of respondent's parental rights to LMB under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j), citing the barriers of domestic violence, respondent's CPS history, and LMB's ongoing preference to have no contact with respondent. Evidence presented at the termination hearing revealed the probable source of LMB's trauma. LMB's mother testified regarding significant domestic violence in the home. She testified that respondent was physically violent with her and the children at least every week, sometimes more often. She described that during one assault, she escaped through a window with LMB in her arms, and that respondent hit and kicked her as she tried to flee, sometimes hitting LMB. She testified that respondent assaulted her many other times, one time throwing her down the stairs, and another time threatening to break her neck and throw her from the car. She explained that LMB shared a bedroom with her and respondent for several years and therefore witnessed many incidents of domestic violence. She testified that eventually LMB began to attempt to protect her from respondent, standing between her and respondent, and telling respondent that the next time respondent hit her, LMB was going to kill respondent. LMB's counselor recommended that respondent not have contact with LMB, and testified that LMB was so afraid of respondent that even the mention of respondent caused LMB to regress and hide under furniture. The psychologist who performed father's initial psychological evaluation testified that respondent caused LMB's trauma and that reintroduction to a parent who was the root of the child's trauma could be very detrimental to the child's progress, retriggering the child's trauma. At the conclusion of the hearing, the trial court terminated respondent's parental rights to LMB under MCL 712A.19b(3)(c)(*ii*), (g), and (j), after finding that termination was in LMB's best interests. Respondent now appeals.

## II. DISCUSSION

### A. SUSPENSION OF PARENTING TIME

Respondent contends that the trial court erred by suspending his parenting time with LMB while the case was pending before the trial court, and that the suspension of his parenting time interfered with his ability to reunify with the child. Resolution of this issue requires us to consider the application of statutes and court rules, which we do de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

When a child has been removed from a parent's custody, the parent generally is entitled to frequent parenting time with the child. MCR 3.965(C)(7)(a). Parenting time may be suspended by the trial court, however. MCR 3.965(C)(7)(a) and MCL 712A.13a(13) govern the trial court's authority to suspend parenting time during the period from the preliminary hearing until adjudication, and require the trial court to make a finding of harm before suspending parenting time. *In re Laster*, 303 Mich App 485, 488; 845 NW2d 540 (2013). MCL 712A.13a(13)[1] provides, in relevant part:

> If a juvenile is removed from the parent's custody at any time, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile. Parenting time between the juvenile and his or her parent shall not be less than 1 time every 7 days unless the court determines either that exigent circumstances require less frequent parenting or that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being. If the court determines that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being, the court may suspend parenting time until the risk of harm no longer exists. . . .

Similarly, MCR 3.965(C)(7)(a) provides:

> Unless the court suspends parenting time pursuant to MCL 712A.19b(4), or unless the child has a guardian or legal custodian, the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if supervised, may be harmful to the child.

Once a petition seeking to terminate parental rights to a child has been filed, MCL 712A.19b(4) and MCR 3.977(D) permit the trial court to suspend parenting time without a finding

---

[1] *In re Laster* discussed the former version of MCL 712A.13a(13), which provided that "[i]f a juvenile is removed from his or her home, the court shall permit the juvenile's parent to have frequent parenting time with the juvenile. If parenting time, even if supervised, may be harmful to the juvenile, the Court shall order the child to have a psychological evaluation or counseling, or both, to determine the appropriateness and the conditions of parenting time. The court may suspend parenting time while the psychological evaluation or counseling is conducted." [MCL 712A.13a(13), as amended by 2012 PA 163.]

of harm. *In re Laster*, 303 Mich App at 488-489. There is no court rule, however, specifically addressing the trial court's authority to suspend parenting time between adjudication and the filing of a petition seeking termination of parental rights. *Id.* at 489. Although MCL 712A.18f(3)(e) and (f) require the contents of the case service plan to include regular and frequent parenting time absent suspension of parenting time on the basis of harm, those statutory subsections govern what the agency's case service plan must include, not the trial court's authority to suspend parenting time following adjudication. *In re Laster*, 303 Mich App at 489-490. This Court held that during the period following adjudication but before the filing of the petition seeking termination, the amount of parenting time permitted and under what conditions are within the discretion of the trial court and should be decided based upon the child's best interests. *Id.* at 490. No finding of harm is required to suspend parenting time during this period, although usually it is "implicit in the court's decision" to suspend a parent's parenting time. *Id.*

In this case, the trial court first suspended respondent's parenting time with LMB on May 16, 2018, after the preliminary hearing but before adjudication occurred. Petitioner moved to suspend respondent's parenting time with LMB under MCL 712A.13a(13), alleging that following parenting time, LMB, then age seven, exhibited extreme behaviors such as kicking, screaming, hitting, and spitting. At the hearing on the motion, the foster care worker testified that LMB's extreme behaviors would occur near the end of a visit, and would continue through the next day. At one parenting visit, when respondent attempted to hug LMB and say goodbye, LMB "stuck out his middle finger and said F you." LMB then refused to leave the play area of the restaurant until respondent and LMB's mother left the restaurant. The foster care worker testified that during another visit LMB stated that he hated respondent. The foster care worker testified that it was unknown at that time what was causing LMB's behavior, and she recommended that parenting time be suspended until LMB was assessed by a counselor. She testified that there was a risk of harm to LMB if the visits continued without further understanding of the child's trauma.

At the conclusion of the hearing, the trial court suspended respondent's parenting time with LMB for six weeks and ordered that a hearing be held at the end of that time to revisit the issue. The trial court did not make an explicit finding regarding harm to the child at that time. At a subsequent hearing held July 24, 2018, the trial court explained that its earlier order suspending respondent's parenting time with LMB had been put in place because of LMB's "significant and severe" behavior at parenting time and the "inability to have that behavior controlled by the parents."

After adjudication, the trial court continued its order suspending parenting time between respondent and LMB. The evidence suggested that LMB had experienced extreme trauma while living in respondent's home, although at that time LMB had not disclosed the source of the trauma. At a hearing held August 21, 2018, the trial court was advised that AB, who was then 16 years old, was refusing to participate in parenting time with respondent. At a review hearing in January 2019, the trial court was advised that LMB, age seven, and his two brothers, CB and WH, ages 11 and 13, all were exhibiting similar episodes of extreme anger and violence. Although all three brothers were very passive in their behavior much of the time, all three were prone to violent, unpredictable outbursts in which they destroyed property and had to be physically restrained, and all three sometimes exhibited sexualized behavior. LMB expressed extreme fear of respondent but would not talk about what had occurred in the home. The children were diagnosed with post-traumatic stress disorder. LMB's counselor opined that it would be detrimental for LMB to visit

-4-

with respondent. Although the trial court at this point was not required to find harm before suspending parenting time, the trial court found that parenting time between respondent and LMB, even if supervised, might be harmful to LMB. The trial court therefore continued the suspension of respondent's parenting time with LMB.

To summarize, the trial court first suspended respondent's parenting visits with LMB on May 16, 2018, after the preliminary hearing but before the adjudication occurred. At that juncture, the trial court was required to find that contact with respondent was potentially harmful to LMB before suspending parenting time; because the trial court suspended parenting time without making a finding of harm, the trial court erred. See MCR 3.965(C)(7)(a); MCL 712A.13a(13). We observe, however, that the trial court's decision to suspend parenting time was supported by evidence that LMB was exhibiting extreme behaviors during and following the parenting visits, especially toward respondent, warranting suspension of parenting time until the source of the child's trauma could be ascertained. We further note that parenting time during this period was suspended for approximately ten weeks. Nothing in the record suggests that the 10-week suspension of parenting time prior to adjudication had a significant impact on respondent's ability to reunify with the child.

After adjudication, the trial court assumed jurisdiction of the child and continued its order suspending respondent's parenting time with LMB. Because adjudication had occurred, however, suspension of parenting time was within the discretion of the trial court based upon the child's best interests; no finding of harm was required to suspend respondent's parenting time after July 26, 2018. See *Laster*, 303 Mich App at 489-490. Because ample evidence on the record supports the finding that suspension of respondent's parenting time with LMB was in the child's best interests, we conclude that the trial court did not abuse its discretion by suspending respondent's parenting time after July 26, 2018.

In sum, there is no support for respondent's assertion that suspension of his parenting time interfered with his ability to reunify with LMB. The barrier to reunification was the trauma respondent caused LMB. A review of the record establishes that the basis of LMB's trauma and fear was likely the numerous episodes of violence he witnessed respondent perpetrate against LMB's mother. Even after two years of services, LMB remained traumatized by the events that occurred in the family's home, creating a barrier to reunification.

B. REASONABLE EFFORTS

Respondent also contends that petitioner failed to make reasonable efforts to reunify him with LMB. Respondent argues that he could only achieve reunification with LMB if he could have parenting time with him to implement what he had learned through services; because he was not permitted parenting time with LMB, any efforts toward reunification were less than reasonable. We disagree.

Absent aggravating circumstances, "[b]efore a court may enter an order terminating parental rights, Michigan's Probate Code, MCL 710.21 *et seq.*, requires a finding that the [DHHS] has made reasonable efforts at family reunification." *In re Hicks/Brown*, 500 Mich 79, 83; 893 NW2d 637 (2017). "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court

involvement and to achieve reunification." *Id*. at 85-86. The agency's reasonable efforts must include services "to the parents, child, and foster parents in order to improve the conditions in the parents' home, facilitate return of the child to his own safe home or the permanent placement of the child." *In re Rood*, 483 Mich 73, 104; 763 NW2d 587 (2009) (quotations marks and citation omitted). But although the DHHS is obligated to make reasonable efforts to provide services aimed at reunification, the respondent parent has the duty to participate in the services offered and also to benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). To demonstrate that the agency failed to provide reasonable services, the respondent must establish that he or she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

We review for clear error a trial court's findings regarding the reasonableness of the agency's efforts to reunify a family. *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). Factual findings are clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *Id*. A trial court's finding is not clearly erroneous unless it is more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). We further observe that "[t]rial courts are in the best position, in the first instance, to determine whether the steps taken by the [DHHS] in individual cases are reasonable." *In re Hicks/Brown*, 500 Mich at 88 n 6.

In this case, the record indicates that the DHHS made reasonable efforts to reunify respondent with LMB, providing them both significant services aimed at reunification. Respondent was provided a psychological evaluation, counseling with an anger specialist, individual counseling, domestic violence counseling, family counseling, and parenting education. LMB was provided trauma assessment and counseling, as well as foster care services. LMB's reaction to parenting time with respondent was extreme fear and anger, causing the trial court to suspend parenting time. For more than two years, both respondent and LMB participated in extensive counseling, a major objective of which was to ascertain the source of LMB's behavior. Respondent nonetheless remained either unable or unwilling to assist his child by revealing to counselors that the likely source of LMB's behavior was the trauma he experienced while watching respondent beat and threaten LMB's mother on a weekly basis. We conclude that respondent's failure to benefit from the extensive services provided, rather than lack of reasonable efforts on the part of the agency, was the barrier that prevented reunification.

## C. STATUTORY BASIS FOR TERMINATION

Respondent also contends that the trial court erred when it determined that clear and convincing evidence demonstrated a statutory basis to terminate his parental rights to LMB. We disagree.

To terminate parental rights, the trial court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). Although termination may be warranted under more than one statutory section, only one statutory basis must be demonstrated by clear and convincing evidence to terminate a parent's parental rights. *In re Pederson*, 331 Mich App 445, 470; 951 NW2d 704 (2020). We review for clear error the trial court's decision that at least one statutory basis to terminate parental rights has been proven by clear and convincing evidence. *In re Keillor*,

325 Mich App at 85. The trial court's decision to terminate parental rights is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*ii*), (g), and (j), which provide for the termination of parental rights as follows:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> * * *
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination under MCL 712A.19b(3)(c)(*ii*) is warranted when the parent fails to rectify other conditions that exist after being given opportunity to do so, and there is no reasonable likelihood that the parent will do so within a reasonable time, given the child's age. Termination under subsection (3)(g) is proper when, although the parent is financially able to do so, the parent "fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Failure of a parent to benefit from a case service plan is evidence that the parent will not be able to provide proper care and custody for the child. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Termination under subsection (3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j).

In this case, the trial court found that termination was warranted under all three grounds. The trial court stated, in relevant part:

> [Respondent] participated in everything and I'll give him credit for that but did he ever address the right issue? His counselor, 60 sessions with his counselor, . . . and never once acknowledged domestic violence in the home or that he was the perpetrator of it, which goes against the great weight of the evidence in this case, from the children to the wife. They all indicate there was extensive domestic violence in this home. [Respondent] never acknowledged that, refused to acknowledge it, and wouldn't admit it after 60 counseling sessions. . . . I don't believe he made any progress because he never addressed the central issue in this case, his propensity for domestic, physical, mental, and emotional violence against his children and his wife. He acknowledged that he could be a better dad and he made some mistakes in parenting. Beating your children and beating your wife in front of your children is not – well, all in all I find that all the statutory grounds support termination of the father's parental rights. In this case, all the health care professionals that have dealt with [LMB] have indicated it would be highly traumatic if he was returned to the father's care and custody and he may never be ready to be returned to his father's care and custody. The father refuses to acknowledge his role in the children's trauma, especially to [LMB] and he hasn't made therefore any progress. He presents, in this court's opinion, a reasonable threat of harm to this young man and that exposure of this young man to his father would be highly traumatic.

We agree that the record supports termination of respondent's parental rights under the statutory subsections (g) and (j). As the trial court observed, respondent participated in services, but never acknowledged to his counselors that he routinely beat his wife and children, and also engaged in mental and emotional cruelty toward them. Although respondent participated in the treatment plan, he failed to gain insight into the changes necessary to adequately parent LMB, and there was no reasonable likelihood that respondent would be able to provide proper care and custody for LMB within a reasonable time. As a result, there is a reasonable likelihood that the child would be harmed if returned to respondent's care. The trial court therefore did not clearly err by terminating his parental rights.

## D. BEST INTERESTS OF THE CHILD

Respondent also contends that the trial court erred by finding that a preponderance of the evidence established that termination of respondent's parental rights was in LMB's best interests. We disagree. Once a statutory ground for termination has been demonstrated, the trial court must terminate the parent's parental rights if a preponderance of the evidence establishes that termination is in the child's best interests. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). This Court reviews for clear error the trial court's decision regarding a child's best interests. *Id.* at 226.

When determining whether termination of parental rights is in a child's best interests, the trial court is obligated to weigh all available evidence. *In re White*, 303 Mich App at 713. The trial court should consider a variety of factors, including the child's bond to the parent, the parent's

parenting ability, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, a parent's history of domestic violence, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being in the foster home, and the possibility of adoption. *Id.* The trial court also should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). At this stage, the interest of the child in a stable home is superior to the interests of the parent. *In re Medina*, 317 Mich App at 237. In this case, the trial court found that termination of respondent's parental rights was in LMB's best interests, stating:

> The court is mindful of the fact that [CB and WH] have been returned to his home. This is an unusual case but the statements from all the healthcare providers in this case indicate that children experience and react to these highly traumatizing events in an extremely different way. The fact is [respondent] did not address the specific trauma issues of [LMB] and refused, in this court's opinion, to acknowledge why [LMB] was removed, his role in the child's removal from the home, and his refusal to acknowledge any responsibility for the child's removal from the home and including, in this court's opinion, his dishonesty with his therapist and Mr. Wyman. He was not forthright with either and his desire to put himself in such a favorable light with those providers wouldn't allow him to make the progress that he needed to do to have any contact with this child.

Respondent contends that the trial court found that termination was in the best interests of the child based on unsubstantiated allegations that he physically abused LMB. Respondent further argues that he was not permitted to demonstrate his improved parenting methods because he was not allowed parenting time with LMB. The record, however, demonstrates that being returned to respondent's care was not in LMB's best interests. The evidence established that respondent was physically violent to LMB and to LMB's mother and siblings, and that LMB was extremely fearful of respondent. Respondent's failure to recognize that his physical, mental, and emotional violence toward LMB and the other family members was the source of LMB's trauma and fear resulted in respondent failing to remove this significant barrier to reunification. The record also demonstrated that LMB needs permanency, stability, and finality and that he would not receive those benefits in respondent's care. We conclude that the trial court did not clearly err in concluding that a preponderance of the evidence demonstrates that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola